No. 24-12079-D

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

WORLD MEDIA ALLIANCE LABEL INC.,
Plaintiff-Appellant,

v.

BELIEVE SAS,
Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida
No. 1:23-cv-21894-FAM

---

## BRIEF OF APPELLEE BELIEVE SAS

---

Allison S. Lovelady, Esq.
Florida Bar No. 70662
alovelady@shullmanfugate.com
Shullman Fugate PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL  33411
Telephone: (561) 614-2592

*Counsel for Appellee Believe SAS*

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to 11th Cir. R. 26.1-2, Appellee certifies that the following persons have or may have an interest in the outcome of this case or appeal, in addition to the one entity named in Appellant's opening brief:

Believe SAS, Named Appellee (but not an active company)

Believe SA (BLV), Appellee (listed on Euronext France)

Upbeat Bidco, 96% owner of Believe SA and a privately held corporation

Lambert, George, Esq., counsel for Appellant

Lovelady, Allison S., Esq., counsel for Appellee

Moreno, The Honorable Federico A., trial judge

Shullman Fugate PLLC, counsel for Appellee

The George Lambert Law Firm, counsel for Appellant

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The case was dismissed below for lack of personal jurisdiction over Appellee, an entity that was formed and has its principal place of business in France. The record is limited since this matter was decided in the early stages of litigation, and the relevant case law within this Circuit is well-settled and self-explanatory. As such, Appellee does not believe that oral argument is necessary in this case.

# <u>TABLE OF CONTENTS</u>

Certificate of Interested Persons and Corporate Disclosure Statement ................C-1

Statement Regarding Oral Argument ........................................................................ i

Table of Contents ..................................................................................................... ii

Table of Citations .................................................................................................... iv

Statement of Jurisdiction ..........................................................................................1

Statement of the Issues .............................................................................................2

Statement of the Case ...............................................................................................3

Summary of Argument ............................................................................................12

Argument .................................................................................................................13

      I.     The Lower Court Properly Dismissed This Case

           For Lack of Personal Jurisdiction .......................................................13

           A.  No Error in Finding Lack of Personal Jurisdiction ......................15

              1.  No *Prima Facie* Showing of General Jurisdiction ...............17

              2.  No *Prima Facie* Showing of Specific Jurisdiction ...............21

           B. Alternatively, No *Prima Facie* Showing as to Due Process ..........26

           C. No Abuse of Discretion as to Jurisdictional Discovery ................28

      II.    The Lower Court Did Not Abuse its Discretion in

           Denying WMA's Rule 59(e) Motion ..................................................31

III.    In the Alternative, the Lower Court's Dismissal is Sustainable

    on Other Grounds ...................................................................34

    A.  International Abstention Doctrine ................................35

    B.  Failure to State a Valid Cause of Action  ....................38

        1.    Counts II (Statutory Damages) & III (Attorney's Fees)......38

        2.    Count V (Interference) ........................................40

Conclusion .....................................................................................40

Certificate of Compliance ..............................................................41

Certificate of Service .....................................................................42

# <u>TABLE OF CITATIONS</u>

## <u>*Cases*</u>

*A&M Mgmt. Inc. v. Deme*,

   No. 18-cv-63099, 2019 WL 7344821 (S.D. Fla. May 14, 2019) ........................34

*Achievers Unlimited, Inc. v. Nutri Herb, Inc.*,

   710 So. 2d 716 (Fla. 4th DCA 1998) ....................................................................21

*Andres v. Raytheon Techs. Corp.*,

   No. 21-cv-61757, 2022 WL 1015489 (S.D. Fla. Apr. 5, 2022) ..........................16

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*,

   480 U.S. 102 (1987) ....................................................................................... 13-14

*ASI Diamonds, Inc. v. Allianz Versicherungs-Aktiengesellschaft*,

   No. 1:18-cv-20680, 2018 WL 8193867 (S.D. Fla. Aug. 16, 2018) .....................37

*Avena v. Imperial Salon & Spa, Inc.*,

   740 Fed. Appx. 679 (11th Cir. 2018) ..................................................................29

*Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*,

   722 Fed. Appx. 870 (11th Cir. 2018) ..................................................................30

*Berry v. Crestwood Healthcare LP*,

   84 F.4th 1300 (11th Cir. 2023) ............................................................................32

*Burger King Corp. v. Rudzewicz*,

    471 U.S. 462 (1985)............................................................................16

*Calder v. Jones*,

    465 U.S. 783 (1984)............................................................................26

*Carmouche v. Tamborlee Mgmt., Inc.*,

    789 F.3d 1201 (11th Cir. 2015) ................................................... 20, 21

*Catalyst Pharm., Inc. v. Fullerton*,

    748 Fed. Appx. 944 (11th Cir. 2018)............................................ 23-24

*Caterpillar Fin. Svcs. Corp. v. Venequip Mach. Sales Corp.*,

    No. 22-cv-23002, 2023 WL 8258886 (S.D. Fla. Nov. 29, 2023).......................32

*Cita Trust Company AG v. Fifth Third Bank*,

    879 F.3d 1151 (11th Cir. 2018) ...........................................................29

\* *Daimler AG v. Bauman*,

    571 U.S. 117 (2014)....................................................... 18, 19, 21, 28

*Davis v. LG Chem, Ltd.*,

    849 Fed. Appx. 855 (11th Cir. 2021)....................................................26

*Davis-Harrison v. Chief United States Prob. Officer*,

    No. 22-14334, 2024 WL 2874046 (11th Cir. June 7, 2024)...............................29

\* *Diulus v. American Express Travel Related Svcs. Co., Inc.*,

    823 Fed. Appx. 843 (11th Cir. 2020).................................... 11, 15, 16, 25, 28, 29

*Euroboor, B.V. v. Grafova*,

    No. 2:17-cv-02157, 2018 WL 9617992 (N.D. Ala. Oct. 5, 2018)......................35

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,

    592 U.S. 351 (2021)................................................................................18

*Franklin v. Anderson Media*,

    No. 8:10-cv-2935, 2011 WL 3875519 (M.D. Fla. Aug. 31, 2011) ....................22

*Fraser v. Smith,*

    594 F.3d 842 (11th Cir. 2010) ....................................................... 20, 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,

    564 U.S. 915 (2011)................................................................................21

*Graham Ins. Group, Inc. v. Statronics, Inc.*,

    No. 10-cv-61904, 2011 WL 13217020 (S.D. Fla. Jan. 24, 2011) .......................40

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,

    535 F. Supp. 3d 1299 (S.D. Fla. 2021),

    *aff'd,* 43 F.4th 1303 (11th Cir. 2022)..................................................30

*Hinkle v. Cirrus Design Corp.,*

    775 Fed. Appx. 545 (11th Cir. 2019)..................................................30

*HSC Organics LLC v. Bymaster*,

    No. 8:21-cv-1852, 2022 WL 2275171 (M.D. Fla. June 23, 2022).......... 22, 24, 27

*Humana Inc. v. St. Jude Med., LLC*,

   No. 1:19-cv-23119, 2020 WL 13369049 (S.D. Fla. July 14, 2020)........ 17, 20, 30

*In re Hallucination, Media, LLC*,

   No. 24-10194, 2024 WL 3898536 (11th Cir. Aug. 22, 2024)....................... 32, 33

* *Internet Solutions Corp. v. Marshall*,

   39 So. 3d 1201 (Fla. 2010)........................................................................... 23, 24

*Jackson-Bear Group, Inc. v. Amirjazil*,

   No. 2:10-cv-332, 2011 WL 1232985 (M.D. Fla. Mar. 30, 2011) ................ 23, 27

*Jones v. Bank of Am., N.A.*,

   564 Fed. Appx. 432 (11th Cir. 2014).................................................................36

*Koster v. Grafova*,

   No. 2:17-cv-02157, 2019 WL 2124532 (N.D. Ala. May 15, 2019)....................37

*Krstic v. Princess Cruise Lines, Ltd. (Corp)*,

   706 F. Supp. 2d 1271 (S.D. Fla. 2010).................................................................32

*Lewis v. Reyes*,

   No. 23-12171, 2024 WL 1155813 (11th Cir. Mar. 18, 2024) .............................11

*Licciardello v. Lovelady*,

   544 F 3d 1280 (11th Cir. 2008) ..........................................................................23

*Louis Vuitton Malletier, S.A. v. Mosseri*,

   736 F.3d 1339 (11th Cir. 2013) ..........................................................................24

vii

\* *McCall v. Zotos*,

No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023) ................ 17, 26, 27

*Molbogot v. MarineMax E., Inc.*,

No. 20-cv-81254, 2022 WL 2671124 (S.D. Fla. July 11, 2022) .................... 31-32

\* *Moore v. Cecil*,

109 F.4th 1352 (11th Cir. 2024) ............................................................26

*Nutramax Labs., Inc. v. Lintbells Inc.*,

No. 8:22-cv-1691, 2023 WL 2598663 (M.D. Fla. Mar. 22, 2023) ......................30

*Oviedo v. Ramirez*,

No. 21-cv-23750, 2022 WL 1641865 (S.D. Fla. May 24, 2022) ........................24

*Peruyero v. Airbus S.A.S.*,

83 F. Supp. 3d 1283 (S.D. Fla. 2014) ....................................................28

*Posner v. Essex Ins. Co., Ltd.*,

178 F.3d 1209 (11th Cir. 1999) ..........................................................36

*Quesada v. Better Earth, Inc.*,

No. 6:23-cv-1809, 2024 WL 3890077 (M.D. Fla. Aug. 21, 2024) ....................31

*R.W. v. School Board of St. Lucie County, Fla.*,

No. 15-cv-14300, 2016 WL 11701691 (S.D. Fla. May 23, 2016) ......................38

*Restrepo v. Wells Fargo Bank, N.A.*,

    No. 09-cv-22436, 2010 WL 374771 (S.D. Fla. Feb. 3, 2010)..............................40

*Saito v. Lewis*,

    No. 2:23-cv-266, 2023 WL 4759311 (M.D. Fla. July 26, 2023).........................31

*Silberman v. Miami Dade Transit*,

    927 F.3d 1123 (11th Cir. 2019) ...........................................................................34

*Snow v. DirecTV, Inc.*,

    450 F.3d 1314 (11th Cir. 2006) .................................................................... 25-26

*Strongway Tools, L.L.C. v. Ivin*,

    No. 23-cv-61964, 2024 WL 3964909 (S.D. Fla. Aug. 28, 2024).................. 14, 28

*Trust Int'l Corp. v. Nagy*,

    No. 15-cv-80253, 2017 WL 5248425 (S.D. Fla. Mar. 28, 2017) ........................36

*Turner Entertainment Co. v. Degeto Film GmbH*,

    25 F.3d 1512 (11th Cir. 1994) .............................................................................36

*United States v. Smith*,

    No. 22-10028, 2024 WL 177988 (11th Cir. Jan. 17, 2024).................................23

*United Techs. Corp. v. Mazer*,

    556 F.3d 1260 (11th Cir. 2009) .................................................................... 29-30

*Waite v. All Acquisition Corp.*,

    901 F.3d 1307 (11th Cir. 2018) ......................................................... 18, 19, 20, 21

*Walden v. Fiore*,

    571 U.S. 277 (2014) ........................................................................... 17, 27

*Wendt v. Horowitz*,

    822 So. 2d 1252 (Fla. 2002) ....................................................................23

*Wolf v. Celebrity Cruises, Inc.*,

    683 Fed. Appx. 786 (11th Cir. 2017) ................................................... 30-31

*Zavala v. Ward*,

    No. 21-10989, 2024 WL 510011 (11th Cir. Feb. 9, 2024) ...................... 11, 32

## **Statutes**

\* § 48.193, Fla. Stat. .......................................................... 4, 5, 17, 22

17 U.S.C. § 301 ...............................................................................40

17 U.S.C. § 412 ...............................................................................38

17 U.S.C. § 504 .......................................................................... 38, 39

17 U.S.C. § 505 .......................................................................... 38, 39

## **Rules**

Fed. R. Civ. P. 4 .............................................................................20

Fed. R. Civ. P. 59 .................................................................3, 9-12, 31-33

S.D. L.R. 7.1 .................................................................................31

S.D. L.R. 15.1 ...............................................................................29

x

## STATEMENT OF JURISDICTION

Appellant's Jurisdictional Statement on pages 2-3 of its opening brief is misguided. Specifically, it speaks solely in terms of concepts relating to subject-matter jurisdiction in federal court—a matter that, as the lower court recognized in its dismissal order, has never been in dispute in this case. [*See* Appellant's Brf. at 2: arguing that this Court has to review orders "based on the lack of *diversity of citizenship* among the parties" and that "jurisdiction rests on the *Federal Law Question*, as discussed throughout the present Opening Brief*"* (emphasis added); Doc. 35 at 3.] The issue that should have been addressed in Appellant's Jurisdictional Statement was *appellate* jurisdiction. On that point, it is unclear how this Court has appellate jurisdiction over the orders on appeal—particularly when neither order is a judgment or contains language indicating finality and there is no authority for interlocutory review thereof.

1

## <u>STATEMENT OF THE ISSUES</u>

The issues in this appeal are: (a) whether the lower court erred in dismissing the complaint for lack of personal jurisdiction where the complaint failed to make a *prima facie* showing thereof; (b) whether the lower court abused its discretion in disregarding Appellant's request for jurisdictional discovery that was buried in a response and where Appellant never filed a motion requesting it; (c) whether the lower court abused its discretion in denying Appellant's motion for Rule 59(e) relief; and (d) whether there are alternative grounds upon which the lower court's dismissal can be affirmed.

## STATEMENT OF THE CASE

### A.    *Course of Proceedings and Disposition Below*

Appellant World Media Alliance Label Inc. ("WMA") sued Believe SAS ("Believe") for copyright infringement and other torts based on Russian music videos that Believe allegedly "listed" on YouTube. [Doc. 1.]   WMA correctly alleged that Believe is "registered in France," was "enacted under French law," has "no registration in Florida," and has "no operative office" or "presence" in the United States. [*Id.* at ¶¶ 2, 5, 31-32.]   Believe moved to dismiss on various grounds, including lack of personal jurisdiction. [Doc. 22, 23, 30.]   On that issue, WMA responded that "Believe operates on the Internet across the world" and WMA was allegedly damaged in Florida. [Doc. 29 at 5.]   During the nearly three-month pendency of that motion, WMA never filed any motion for jurisdictional discovery or for leave to amend. The court ultimately dismissed the complaint for lack of personal jurisdiction [Doc. 35], ruling that "Believe is a French corporation registered in France with no specific ties with Florida," and that WMA's "incomplete assertion of personal jurisdiction does not establish the requisite *prima facie* case of a personal jurisdiction over a nonresident defendant." [*Id.* at 4, 7.]   The court did not reach Believe's other grounds for dismissal.   WMA then filed a Rule 59(e) motion to alter or amend judgment, but the lower court denied that motion by paperless order sixteen days later.   [Doc. 36, 37, 38.]   This appeal followed.

3

**B.**    ***Statement of Facts***

**1.**    ***The Complaint***

WMA's claims for copyright infringement and other torts are based on YouTube videos of musical performances by the Russian band "Tender May," which WMA describes as a "cult Soviet and Russian pop group" and "the most popular musical group in the former USSR" and then in Russia.  [Doc. 1 at ¶¶ 10, 12.] According to WMA, it "currently holds the copyright to Tender May's audio and video recordings."  [*Id.* at ¶¶ 16, 24.]  WMA alleges that Appellee Believe "listed" on YouTube forty-four videos of Tender May's performances, and thereby infringed WMA's copyrights thereon.  [*Id.* at ¶ 25.]

The complaint specifically alleged that Believe is "a French type of business entity registered in France" and that Believe's "registered address" and "main office" are both in Paris.  [*Id.* at ¶ 2.]  It further alleged that "despite diligent search, no operative office of Believe could be located in the U.S." and that if Believe "has a presence in the USA, that claim is not supported by the evidence."  [*Id.* at ¶¶ 31-32.]  Despite such explicit allegations that it is suing a non-resident France-based entity, WMA made no reference in the complaint to "personal jurisdiction," to Florida's long-arm statute (§ 48.193, Florida Statutes), or to any of the enumerated acts in that statute which would trigger personal jurisdiction.  In fact, the complaint contains only one allegation about "jurisdiction" generally.  It reads: "Jurisdiction is

proper.  WMA is a Florida corporation.  Two French company [*sic*], Believe, has no registration in Florida.  YouTube and Google are Delaware companies, with their main headquarters in California."[1]  [*Id.* at ¶ 5.]

That is the _only_ jurisdictional allegation in WMA's 24-page complaint.  And the only other allegation mentioning "Florida" is in the "venue" allegation in ¶ 7, in which WMA repeats that it is a "Florida corporation" and alleges that the "infringement of [WMA's] rights has effect in Florida."  [*Id.* at ¶ 7.]

### 2. *Believe's Motion to Dismiss*

Pointing out that WMA's complaint explicitly acknowledged that Believe is a foreign entity with no Florida presence, Believe moved to dismiss the complaint for lack of personal jurisdiction (among other grounds).[2]  [Doc. 22.]  As Believe explained in that filing, WMA "bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of [personal] jurisdiction" [*id.* at 6], but WMA failed to comply—with no allegations showing general or specific jurisdiction under Florida's long-arm statute (§ 48.193) or showing that the

---

[1]    YouTube and Google were initially named as Defendants below, but were later dismissed.  [Doc. 12 & 13.]

[2]    As explained below, WMA failed to make any *prima facie* showing of personal jurisdiction, so the burden never shifted to Believe to present affidavits or evidence refuting jurisdiction.  Nevertheless, Believe went ahead and filed an affidavit in support of its motion that expressly confirmed that "Believe's principal place of business is in France" and that "Believe does not have an office, assets or employees in Florida."  [Doc. 23 (Affidavit of Vitaly Kretc) at ¶¶ 4-5.]

additional requirements of due process were met.   [Doc. 22 at 6-11.]   As Believe pointed out, WMA had not even alleged which of the nine enumerated acts in the long-arm statute that it was relying on, much less made any allegation showing that Believe engaged in "substantial and not isolated activity in Florida" or that it had "purposefully availed" itself of the privilege of doing business in Florida. [*Id.*] Believe further argued that the allegations were legally insufficient to show personal jurisdiction when WMA had not alleged any facts showing that Believe had ever targeted or directed these music videos (or anything else) to a Florida audience or any facts showing that these music videos had ever been *accessed* in Florida.  [*Id.* at 11.]

In the alternative, Believe argued that the complaint should be dismissed under the international abstention doctrine since ownership to the music videos is currently being litigated in Russia—a fact that Believe supported with an affidavit and attached documentation.  [*Id.* at 11-15; Doc. 23; note 2, *supra*.]  Believe further argued that Counts II, III and V in the complaint were legally insufficient.[3]  [Doc. 22 at 15-20.]

---

[3]        Believe did not address Count IV (accounting) because the complaint specifically recited in all capital letters on page 22 that it was "STATED AGAINST DEFENDANTS YOUTUBE AND GOOGLE ONLY."  [Doc. 1 at 22.]

### 3.    *WMA's Response to Motion to Dismiss*

WMA's response to the motion to dismiss was rather unclear.[4]  It appeared to mix together concepts of subject-matter jurisdiction and personal jurisdiction as if they were interchangeable.  [Doc. 29 at 1-13.]  But what was clear is that, insofar as personal jurisdiction was concerned, WMA was merely relying upon its contentions that "Believe operates on the Internet across the world" and that WMA was damaged in Florida.  [Doc. 29 at 5.]  WMA, however, failed to explain how such points could possibly satisfy the exacting requirements of Florida's long-arm statute or due process.  In addition, WMA failed to respond to Believe's argument that dismissal was justified under the international abstention doctrine.   And as for Believe's specific arguments on Counts II, III and V,[5] WMA ignored all of that—choosing instead to just quote lengthy statutory passages to support Count II and III without tying any of it to the actual allegations in its complaint and just proclaiming entitlement to relief on Count V with no analysis or authority at all.  [Doc. 29 at 16-18.]

---

[4]    Believe's reply memorandum is in the record at Doc. 30.   It deconstructed WMA's response and zeroed in on its many flaws, as discussed above.

[5]    Since these grounds relating to Counts II, III and V were not the basis for the lower court's ruling, they are not addressed in this fact section.  More details about those arguments, however, are included under Point III in the Argument section below, which explains that the dismissal is alternatively sustainable on other grounds.

At the very end of its response, WMA made a barebones request for jurisdictional discovery and for an opportunity to amend the complaint. [Doc. 29 at 19-20.]   However, nothing was said about what such jurisdictional discovery was intended to show, nor was anything said about what allegations it proposed to add or change.  [*Id.*]  WMA just declared that it had a legal right to both.  As the lower court docket shows, WMA never filed any motion for jurisdictional discovery or motion for leave to amend at any time.  Nor did WMA ever provide a certificate as required by the local rules confirming that it had conferred with opposing counsel about such affirmative requests.

### 4.    *The Dismissal Order on Appeal*

After the motion to dismiss had been pending for nearly three months, the lower court entered an order dismissing the complaint for lack of personal jurisdiction.  [Doc. 35.]  At the outset, the court specifically noted that neither party disputed the court's subject-matter jurisdiction and that the court indeed has subject-matter jurisdiction both under "federal question" and "diversity."  [*Id.*at 3.]  As for personal jurisdiction, however, the court concluded that WMA had failed to make any showing in the complaint to support specific or general jurisdiction over Believe under Florida's long-arm statute.  As to specific jurisdiction, the court explained that there were "no allegations regarding accessibility or publication within the state of Florida" and that there were no allegations that Believe's alleged "tortious activity

8

was specifically directed to Florida residents." [*Id.* at 5-6.] As to general jurisdiction, the court explained that the complaint failed to allege any facts showing the required "continuous and systematic general business contact with Florida." In the court's words:

> [N]owhere in the Complaint does [WMA] allege how or why Florida is the appropriate jurisdiction, besides asserting that the company itself suffered damages in Florida – not that Florida courts have any jurisdiction over Believe. As a matter of fact, Believe is not located in Florida, nor does it own property or regularly conduct business in Florida. Further, [WMA] itself acknowledges that "Believe is a French type business entity registered in France," "enacted under the French law," and "has no registration in Florida." Thus, a "substantial" contact between Believe and Florida does not exist.

[*Id.* at 6.] Because it concluded that WMA failed to make any *prima facie* showing of specific or general jurisdiction under the long-arm statute, the court granted Believe's motion to dismiss. [*Id.* at 7.] The court went on to say that "because neither specific nor general jurisdiction is present, a Due Process analysis is not necessary." [*Id.*] The court did not reach any of Believe's alternative grounds for dismissal either.

### 5.    ***Denial of WMA's Rule 59(e) Motion***

The following month, WMA filed a "Verified Plaintiff's Motion under Rule 59(e) to Alter or Amend Order of Dismissal for Lack of Jurisdiction, Dated January 24, 2024." [Doc. 36.] In that filing, it claimed that there was "new evidence" to

support the motion. Specifically, it recited that "on February 6, 2024 . . . Believe got registered in the DMCA list pursuant to a federal statute . . . and in accordance with two International Treaties, submitting itself to the jurisdiction of federal courts." [*Id.* at 2.] The problem, however, is that none of WMA's ensuing discussion about that alleged registration and the international treaties was connected to the issue of *personal* jurisdiction—which was the sole subject of the lower court's dismissal. If anything, its rambling discussion involved subject-matter jurisdiction, which the lower court already ruled was not in dispute.

Although WMA admitted that a Rule 59(e) motion is not permitted "to relitigate old matters, raise arguments or present evidence that could have been raised prior to the entry of judgment" [*id.* at 1-2], WMA did just that by re-arguing numerous points that it had previously raised in its response to the motion to dismiss. Plus, it threw in a bunch of unsupported "facts" that were never alleged in its complaint, such as Florida allegedly having "at least 250,000 Russian-speaking residents and citizens, who are interested in those videos, with songs primarily in Russian language." [*Id.* at 10-11.]

In its response to the Rule 59(e) motion [Doc. 37], Believe pointed out that the alleged "new" evidence that WMA raised was not new at all, but rather was "in existence prior to the filing of WMA's complaint" and in any event was irrelevant to the topic of personal jurisdiction. [*Id.* at 4.] Believe further pointed out that

10

WMA's motion merely re-hashed a bunch of arguments that it had previously made in its memorandum opposing dismissal, which is improper in a Rule 59(e) motion. [*Id.* at 1-2, 8-10.]  After that response was filed (and 16 days after the motion had been filed),[6] the lower court entered a paperless order denying the motion. [Doc. 38.]

**C.**    ***Statement of Standard of Review***

The dismissal of the complaint is reviewed *de novo*.  *See, e.g., Lewis v. Reyes*, No. 23-12171, 2024 WL 1155813, at *2 (11th Cir. Mar. 18, 2024).  But the denial of jurisdictional discovery is reviewed for abuse of discretion.  *See Diulus v. American Express Travel Related Svcs. Co., Inc.*, 823 Fed. Appx. 843, 846 (11th Cir. 2020) ("we review the district court's decisions . . . to deny jurisdictional discovery for abuse of discretion").  The denial of WMA's Rule 59(e) motion is also reviewed for abuse of discretion.  *See Zavala v. Ward*, No. 21-10989, 2024 WL 510011, at *2, *5 (11th Cir. Feb. 9, 2024).

---

[6]    In its opening brief on page 13, WMA inexplicably represents that the lower court denied its Rule 59(e) motion "literally a day after the Motion was filed, without awaiting even an Opposition of Believe."  This is incorrect.  As the docket shows, the lower court entered its order *16 days after WMA's motion was filed*, plus as noted Believe did file an opposing memorandum [Doc. 36, 37, 38].  It is unclear why WMA would misrepresent the record in this way.  Moreover, WMA curiously argues that the lower court's "denial of a Rule 59(e) Motion without any explanation whatsoever makes such a ruling fundamentally defective."  [WMA Brf. at 13.]  That too is incorrect.  WMA cites no authority (nor can it do so) that requires a court to explain its reasons for denying Rule 59(e) relief.

## **SUMMARY OF ARGUMENT**

The lower court dismissed this case for lack of personal jurisdiction over Believe—an entity that is based in France and that has no office, assets, employees or presence in Florida. The basis for that ruling was that WMA failed to make any *prima facie* showing in its complaint to support general or specific jurisdiction under Florida's long-arm statute. Specifically, WMA failed to allege any facts showing that Believe committed any of the enumerated acts in the statute that could give rise to special jurisdiction, nor did it allege that Believe engaged in any continuous and systematic activity in Florida that could give rise to general jurisdiction. In fact, the complaint did not even contain any allegation about personal jurisdiction or the long-arm statute at all. Moreover, there was no allegation that Believe had ever targeted the state of Florida in any way or that the music videos had ever been accessed in this state. Accordingly, the lower court was eminently correct in dismissing the complaint. In so ruling, it committed no abuse of discretion in disregarding WMA's request for jurisdictional discovery that was merely buried in its dismissal response. WMA never filed a motion seeking such relief and never explained what such discovery was intended to show. As for WMA's subsequent Rule 59(e) motion, the lower court committed no abuse of discretion in denying that motion either because that rule does not apply in the absence of a judgment and because WMA presented nothing that was legally sufficient to justify such relief.

12

Even if this Court were to disagree with the jurisdictional ground upon which the lower court dismissed this case, there are several alternative bases for affirmance. First, WMA failed to make any *prima facie* showing that the exercise of personal jurisdiction over Believe would satisfy due process. Second, the complaint was subject to dismissal under the international abstention doctrine, which WMA never opposed below. And third, nearly all of counts failed to state a valid cause of action in the first place. The simple point is that there are many different paths to affirm the dismissal of this action.

## ARGUMENT

## I

## THE LOWER COURT PROPERLY DISMISSED THIS CASE FOR LACK OF PERSONAL JURISDICTION

At issue is personal jurisdiction over a foreign defendant (Believe) which was incorporated in France and has its principal place of business in Paris—with no office, assets or employees located anywhere in Florida. All of that is undisputed. At the outset, it is important to recognize that in an *international* context such as this, courts must afford even stronger scrutiny before exercising personal jurisdiction over a non-resident defendant. As the United States Supreme Court pointedly observed in *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102 (1987):

The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. … _Great care and reserve should be exercised when extending our notions of personal jurisdiction into the **international** field_.

_Id._ at 114-15 (1987) (emphasis added); _accord Strongway Tools, L.L.C. v. Ivin_, No. 23-cv-61964, 2024 WL 3964909, at *2 (S.D. Fla. Aug. 28, 2024) (dismissing copyright infringement action against Ukrainian citizen and addressing international concerns).

Despite this weighty context and the succinctness of the lower court's ruling, WMA's 55-page opening brief presents a meandering hodge-podge of disjointed musings largely untethered to the actual ruling below. And like its filings in the lower court, WMA's brief extensively digresses into _subject-matter_ jurisdiction over copyright matters—a matter that, as the lower court pointedly observed, was not in dispute.[7] [Doc. 35 at 3.] In fact, WMA's brief does not reach the issue of personal jurisdiction _until page 49_, and then strangely labels the whole topic as "Unnecessary to Federal Statutes." [WMA Brf. at 49 (heading to Issue 17).] Starting on that page and continuing through Issues 17-19, WMA's brief essentially just recites a string

---

[7]    To the extent that many issues in WMA's opening brief (including but not limited to Issues #1, 2, 3, 4, 5, 6, 8, 15 & 16) appear to relate to subject-matter jurisdiction, none of that bears on the _**personal**_ jurisdiction issue upon which this case was decided below; thus, these issues do not warrant a response herein.

of basic principles about the relevant inquiries (*i.e.*, specific jurisdiction, general jurisdiction, and due process), but fails to take the next step and explain how any allegations in its complaint actually satisfy such inquiries.  In fact, in its entire discussion of personal jurisdiction in its brief (pages 49-54), WMA never once mentions the allegations of its complaint. As the following explains, the complaint failed to make the requisite *prima facie* showing to support personal jurisdiction, thereby justifying the dismissal entered below.

**A.**     **<u>*No Error in Finding Lack of Personal Jurisdiction*</u>**[8]

In *Diulus v. American Express Travel Related Services Co., Inc.*, 823 Fed. Appx. 843, 848-49 (11th Cir. 2020), this Court explained that in federal court there is a three-step burden-shifting process for evaluating a dismissal motion for lack of personal jurisdiction.  It begins with an initial burden on the plaintiff to make a *prima facie* showing of personal jurisdiction <u>in the complaint</u>.  If no such *prima facie* showing is made, the analysis ends right there, and the motion to dismiss must be granted.  As this Court explained:

---

[8]     In Issue 7 of its brief (page 37), WMA argues that the lower court "made an Error in not Giving Weight to the Affidavit from WMA's President."  It is unclear what WMA is referring to because there is no such affidavit in the record. In any event, that whole issue is misguided.  As noted, it is the plaintiff's initial burden under *Diulus* to make a *prima facie* showing of personal jurisdiction <u>in the complaint itself</u>.  A burden-shift involving the consideration of affidavits/evidence only arises <u>after</u> that initial showing has been made (which WMA failed to make here).

> Once the defendant files a motion to dismiss, the plaintiff bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction. *If the plaintiff doesn't meet his burden, the district court doesn't go to the second and third steps of the burden-shifting process, and the motion should be granted*.
>
> …
>
> The district court properly reviewed the allegations in the complaint, found them to be deficient, and dismissed the complaint. There was no reason for the district court to look elsewhere after the [plaintiffs] failed to allege a *prima facie* case of personal jurisdiction.

*Id.* at 849 (emphasis added).   So, as *Diulus* makes clear, the second and third steps of the analysis—which involve a burden-shift to the defendant to present evidence defeating personal jurisdiction and then a burden-shift back to the plaintiff to present refuting evidence—never come into play if the complaint fails to make a *prima facie* showing in the first place.   *See also Andres v. Raytheon Techs. Corp.*, No. 21-cv-61757, 2022 WL 1015489, at *2 (S.D. Fla. Apr. 5, 2022) (dismissing case due to plaintiff's failure to make *prima facie* showing of personal jurisdiction in his pleading and observing that "defendants have a well-established 'liberty interest' in not being subject to process and binding judgments in a forum where they have no meaningful ties") *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985).

To make a *prima facie* case of personal jurisdiction, a plaintiff must allege in the complaint sufficient factual allegations to support personal jurisdiction under Florida's long-arm statute *and* to support the "more restrictive" requirements of due

16

process.  *See McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *3-4 (11th Cir. June 12, 2023).  But here, WMA's allegations did not even mention personal jurisdiction or the long-arm statute, much less which provision of the long-arm statute applied or what requisite acts Believe committed.  All that WMA alleged was that it sustained damage in its home state of Florida.  Such an allegation, however, has no bearing on personal jurisdiction because that improperly focuses on the plaintiff—rather than on the defendant and its connection to the forum state.  *See Walden v. Fiore*, 571 U.S. 277, 290 (2014) (upholding district court's dismissal for lack of personal jurisdiction on due process grounds and observing that "[t]he proper question is _not where the plaintiff experienced a particular injury_ or effect but whether the defendant's conduct connects him to the forum in a meaningful way") (emphasis added); *accord Humana Inc. v. St. Jude Med., LLC*, No. 1:19-cv-23119, 2020 WL 13369049, at *4 (S.D. Fla. July 14, 2020).  As the following explains, the complaint failed to even come close to what is required to make a *prima facie* showing of either general or specific jurisdiction under Florida's long-arm statute.

### 1. *No Prima Facie Showing of General Jurisdiction*

To make a *prima facie* showing of general jurisdiction, WMA was required to allege sufficient facts showing that Believe engaged in "substantial and not isolated activity within this state."  *See* § 48.193(2), Fla. Stat.  This required factual allegations that Believe's business "affiliations with [Florida] are so continuous and

17

systematic as to render it essentially *at home in [Florida]*." *See Daimler AG v. Bauman*, 571 U.S. 117, 123, 139 (2014) (brackets removed; emphasis added). As *Daimler* illustrates, that is no easy task. There, the Supreme Court ruled that California courts had no general jurisdiction over Germany-based Daimler—even though its subsidiary Mercedes-Benz USA had multiple facilities in California and was the largest supplier of luxury vehicles to the California market, and California accounted for 2.4% of Daimler's worldwide sales. Despite all of that, the Daimler entity itself was found to lack "affiliations with the State [that] [we]re so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 139 (brackets omitted).

*Daimler*, in turn, was the very basis of this Court's ruling on general jurisdiction in *Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018), *abrogated on other grounds*, *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 358-59 (2021).[9] In *Waite*, this Court observed that a plaintiff bears a "heavy burden" to show general jurisdiction when (as here) the defendant's state of incorporation and principal place of business are outside the forum state. As this Court explained:

---

[9]    *Ford* actually bolsters Believe's argument on general jurisdiction here because *Ford* found that courts in the forum states (there, Montana and Minnesota) did not have general jurisdiction over Ford where those states were not its "place of incorporation" or "principal place of business." *Ford*, 592 U.S. at 358-59.

> [O]nly a limited set of affiliations with a forum will render a defendant at home there. The paradigm all-purpose forums in which a corporation is at home are the corporation's place of incorporation and its principal place of business. Outside of these two exemplars, a defendant's operations will be so substantial and of such a nature as to render the corporation at home in that State only in an "exceptional case." The facts of *Daimler* illustrate the heavy burden of establishing such an exceptional case.

*Id.* at 1317-1318.

The facts in *Waite* likewise illustrate the "heavy burden" to show "at home" status that would trigger general jurisdiction.  In that case, this Court affirmed the dismissal of claims against Union Carbide, ruling that the plaintiff failed to show general jurisdiction over it.  This Court so ruled even though Union Carbide "had a distributor in Florida, along with several Florida customers," had "registered to do business in Florida in 1949," "maintain[ed] an agent to receive service of process" in Florida, and "built a plant in the state and discussed building a shipping terminal there."  As this Court explained, none of those activities were tantamount to rendering the company "at home in Florida," particularly when there was no allegation that "Union Carbide's leadership was based in Florida or that the company otherwise directed its operations from Florida."  *Id.* at 1318.  The Court concluded:

> At most, Union Carbide's activities show that it conducted significant business in Florida. But *Daimler* tells us that even substantial, continuous, and systematic business is insufficient to make a company at home in the state.
> …

19

> Because Union Carbide's contacts in Florida do not closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business, we conclude that the exercise of general jurisdiction over Union Carbide in Florida would violate due process.

*Id.* Other decisions of this Court likewise reflect how difficult it is for a plaintiff to establish general jurisdiction over a defendant that is based outside the forum state. *See Fraser v. Smith,* 594 F.3d 842, 844-47 (11th Cir. 2010) (no general jurisdiction over Turks/Caicos-based defendant <u>*even though it maintained a website accessible from Florida*</u>, advertised in the *Miami Herald*, procured insurance through a Florida agent, purchased about half its boats in Florida, and sent employees/representatives to Florida for training and to promote its services);[10] *accord Carmouche v. Tamborlee Mgmt., Inc.,* 789 F.3d 1201, 1204 (11th Cir. 2015) (no general jurisdiction over Panama-based defendant despite it "having a Florida bank account and two Florida addresses . . . , purchasing insurance from Florida companies, filing a financing statement with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to the jurisdiction of the Southern District of Florida for all lawsuits arising out of its agreements with Carnival").[11]

---

[10]    WMA never raised or argued Fed. R. Civ. P. 4 below or in this Court.

[11]    *See generally Humana,* 2020 WL 13369049, at *4 (merely alleging that defendant "does business throughout the world and throughout the United States, including in the State of Florida . . . do[es] not support a finding that [defendant] is essentially at home in Florida").

Here, any alleged connection between Believe and the state of Florida is even more tenuous (by far) than the connections which were rejected as supporting general jurisdiction in *Daimler, Waite, Fraser* and *Carmouche*.  Indeed, not a single allegation showed the requisite "continuous and systematic" affiliation with the state of Florida.[12]  WMA therefore failed to make a *prima facie* showing of general jurisdiction below.

## 2. *No Prima Facie Showing of Specific Jurisdiction*

Subsection (1)(a) of Florida's long-arm statute provides the criteria for evaluating a court's "specific jurisdiction" over a foreign defendant and, unlike general jurisdiction, this separate inquiry focuses on the specific claims before the

---

[12]    WMA's own cited case of *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)—which it cites on page 50 of its opening brief—defeats its position and actually supports dismissal.  In *Goodyear*, the plaintiff sued three Goodyear subsidiaries (one coincidentally located in France) in North Carolina. Even though that state would have jurisdiction over the Goodyear parent company, the Court ruled that North Carolina courts did not have jurisdiction over the subsidiaries in France and other countries given their lack of lack of continuous and systematic general business contacts with the state of North Carolina.  *Id.* at 929 (their "attenuated connections to the [forum] State fall far short of the *continuous and systematic general business contacts* necessary to empower North Carolina to entertain suit against them") (cleaned up; emphasis added).  WMA's further reliance on *Achievers Unlimited, Inc. v. Nutri Herb, Inc.*, 710 So. 2d 716 (Fla. 4th DCA 1998), is unavailing. The sheer amount of communications/activities between the defendants and the state of Florida in that case was substantial, including (among other things) direct communications to distributors in Florida, the purchase of products in Florida, letters postmarked from Florida, communications with the plaintiff in Florida "via telephone, telefax, and mail," sending order forms to Florida, etc.  Nothing even remotely akin to that was alleged in the complaint in this case.

Court. *See* § 48.193(1)(a), Fla. Stat.; *HSC Organics LLC v. Bymaster*, No. 8:21-cv-1852, 2022 WL 2275171, at *3 (M.D. Fla. June 23, 2022).    The long-arm statute sets forth nine possible "acts" by a defendant that can give rise to specific jurisdiction. §§ 48.193(1)(a)1.-9., Fla. Stat.  Here, the complaint does not identify which of those acts that Believe allegedly committed.  That alone highlights WMA's failure to make a *prima facie* showing of specific jurisdiction. *See, e.g.*, *Franklin v. Anderson Media*, No. 8:10-cv-2935, 2011 WL 3875519, at *4 (M.D. Fla. Aug. 31, 2011) (dismissing case for lack of personal jurisdiction where "Plaintiffs do not allege that any of Defendants are residents of Florida, and Plaintiffs fail to identify any section of the Florida long-arm statute that would provide grounds for asserting jurisdiction over these Defendants").

That said, WMA's briefing below and in this Court [*see* WMA Brf. at 51-52] suggest that it may be traveling down the path in subsection (1)(a)2.—namely, that Believe allegedly "[c]ommitt[ed] a tortious act within this state."  To that end, WMA appears to be arguing (though it is not entirely clear) that this provision is satisfied because the YouTube videos at issue were accessible in Florida via the internet.  That fails for two reasons.  First, such accessibility *in Florida* is not even alleged in the complaint.[13]    And second, accessibility alone is legally insufficient to support

---

[13]    Along these lines, WMA argues under Issue 9 of its brief that "[w]hile acting out of France, Believe has been using tactics that can be compared to piracy in cyberspace, as WMA has argued" and "these tactics affected the residents of

jurisdiction. A plaintiff must also allege that a person in Florida actually _accessed_ the offending material on the website—which is not alleged anywhere in the complaint. The Florida Supreme Court has been quite clear that this is how Florida's long-arm statute is to be interpreted and applied. _See Internet Solutions Corp. v. Marshall_, 39 So. 3d 1201, 1215-16 (Fla. 2010). Ironically, WMA repeatedly cites _Internet Solutions_ in its brief [_see_ WMA Brf. at 51, 53 & 54], but evidently did not grasp what the Court actually determined.[14] This Court and others have uniformly adhered to the "accessed" requirement of _Internet Solutions_ since it was issued.[15]

---

Florida. . . . ." [WMA Brf. at 41.] _None of that is alleged in the complaint either_. But even if it were, that merely goes to "accessibility," rather than to the operative inquiry fact under _Internet Solutions—i.e._, whether a third party _in Florida_ actually _accessed_ the offending material on the defendant's website.

[14]    It appears that WMA also did not grasp what was at issue in its own cited decision in _Wendt v. Horowitz_, 822 So. 2d 1252 (Fla. 2002). In its brief, WMA argues that "[t]he Florida Supreme Court, in _Wendt_ . . . addressed personal jurisdiction in the context of Internet activities." [WMA Brf. at 50-51.] But reading _Wendt_ from top to bottom, it is obvious that the Court never addressed "Internet activities" at all. _Wendt_ instead addressed "letters" and "phone calls." This is yet another example of WMA playing fast and loose with this Court.

[15]    This Court's decision in _Licciardello v. Lovelady_, 544 F 3d 1280 (11th Cir. 2008), predates the Florida Supreme Court's decision in _Internet Solutions_ and has thus been superseded. _See, e.g._, _Jackson-Bear Group, Inc. v. Amirjazil_, No. 2:10-cv-332, 2011 WL 1232985, at *5 (M.D. Fla. Mar. 30, 2011). Indeed, this Court is bound to follow Florida Supreme Court precedent on the interpretation and application of Florida statutes. _See United States v. Smith_, No. 22-10028, 2024 WL 177988, at *2, n.5 (11th Cir. Jan. 17, 2024) ("we are bound by the Florida Supreme Court's interpretation of Florida law"). And that is certainly the situation here where _Internet Solutions_ was decided on a certified question from this Court. Like _Licciardello_, WMA's cases cited on pages 53-54 of its brief were also decided before

*See, e.g.*, *Catalyst Pharm., Inc. v. Fullerton*, 748 Fed. Appx. 944, 947 (11th Cir. 2018) (plaintiff failed to make *prima facie* showing of long-arm jurisdiction under *Internet Solutions* because "[w]hile these allegations may establish that [defendant's] statements were accessible in Florida, they do not point to any facts showing the statements were accessed in Florida"); *HSC, supra,* at *4 (citing string of federal decisions applying *Internet Solutions* and finding no long-arm jurisdiction based on the contents of a website "<u>unless a person in Florida viewed the website</u>") (emphasis added);[16] *Oviedo v. Ramirez*, No. 21-cv-23750, 2022 WL 1641865, at *9 (S.D. Fla. May 24, 2022) (dismissing copyright infringement case due to plaintiff's failure to make a *prima facie* showing of personal jurisdiction and explaining that mere accessibility of YouTube videos in Florida was insufficient to support long-arm jurisdiction).

In this case, WMA never even alleged that the YouTube videos at issue were accessible in Florida. But even if such accessibility were assumed, there is no

---

*Internet Solutions* was issued. As for this Court's later decision in *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013), that ruling was expressly based on more than mere accessibility of a website in Florida. In that case, this Court specifically relied on the actual sales of infringing goods to Florida customers through the defendant's website, *id.* at 1354—a decision that comports with *Internet Solutions*. Nothing of the sort was pled in this case.

[16]     The court further noted that although *Internet Solutions* arose in the context of defamation, its holding has been applied beyond that context, including in cases involving other theories such as trademark infringement. *HSC,* 2022 WL 2275171 at *4.

allegation in the complaint that anyone in Florida actually *accessed* them.  That is fatal to specific personal jurisdiction.[17]

Since WMA failed to make a *prima facie* showing of either general or specific jurisdiction under the long-arm statute,[18] the trial court properly dismissed the complaint on that basis alone without reaching due process.  *See, e.g.*, *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1319 (11th Cir. 2006) ("[b]ecause [defendant] Yarmuth is not subject to jurisdiction under Florida's long-arm statute, we need not address whether the Due Process Clause permits jurisdiction. We affirm the grant of

---

[17]     On page 52 of its opening brief, WMA argues that there are four "[f]actors to consider in determining whether a nonresident defendant is carrying on business in Florida as the basis for long-arm jurisdiction."  It then proceeds to list them as: "(1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients."  After that, it disingenuously states that "[a]ll these factors are applicable in the present case."  *But none of that is pled in the complaint,* and there is no good-faith basis for WMA to be making such a representation to this Court.

[18]     On page 51 of its brief, WMA disingenuously attacks Believe for "fail[ing] to submit an affidavit contesting the jurisdictional facts" and claims that "the Court should conduct an evidentiary hearing."  This fails at its core.  First, as *Diulus* teaches, the evidentiary burden never shifts to a defendant where, as here, the plaintiff fails to make a *prima facie* showing of personal jurisdiction in the complaint.  Second, Believe *did* file an affidavit even though it had no duty to do so.  [Doc. 23.]  The affidavit confirmed that Believe's principal place of business is in France and that it has no offices, assets, or employees in Florida.  [*Id*. at ¶¶ 4-5.]  It is unclear how WMA missed that filing.  And third, a plaintiff certainly does not have a right to an evidentiary hearing where, as here, it completely drops the ball in making a *prima facie* showing that creates a jurisdictional dispute.

Yarmuth's motion to dismiss"); *Davis v. LG Chem, Ltd.,* 849 Fed. Appx. 855, 857 (11th Cir. 2021) (affirming dismissal of consolidated cases for lack of jurisdiction and ruling that where plaintiff did not satisfy long-arm statute, "we need not reach the constitutional due process arguments").

**B.**　*Alternatively, No Prima Facie Showing as to Due Process*

Although the lower court did not reach the issue of due process, Plaintiff's failure to make a *prima facie* showing on that issue likewise supports the dismissal entered below.  To satisfy the "*more restrictive*" requirements of due process, a plaintiff must show that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state and that the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See McCall*, 2023 WL 3946827, at *4 (emphasis added).  As this Court explained just a few months ago in the internet context, this requires a showing that the "defendant's internet activity is expressly targeted at or directed to the forum state." *See Moore v. Cecil*, 109 F.4th 1352, 1363-1364 (11th Cir. 2024) (citation omitted); *see generally Calder v. Jones*, 465 U.S. 783 (1984).  As this Court explained, *it is simply "not enough" that a plaintiff has "suffered harm" in the forum state*. *Moore,* 109 F.4th at 1363.  That was also the upshot of *McCall,* in which this Court affirmed the dismissal of a defendant and explained:

> Posting information on the internet is not sufficient by
> itself to subject that person to personal jurisdiction in each

26

> State in which the information is accessed. Otherwise, a person placing information on the Internet would be subject to personal jurisdiction in every State. Something more than posting online and accessibility from the forum is required – [the defendant] must, through her internet posting, manifest an intent to target and focus on Florida readers.

*McCall*, 2023 WL 3946827 at *4 (citation omitted); *accord Jackson-Bear, supra*, at *7 ("mere posting of an infringing document on a website without more is not sufficient to demonstrate [defendants] purposefully aimed their activity toward Florida").

What this Court's decisions highlight is that the inquiry required for due process "looks to the defendant's contacts *with the forum State itself*, not the defendant's contacts with persons who reside there." *See Walden*, 571 U.S. at 285 (emphasis added); *HSC*, 2022 WL 2275171, at *6. Indeed, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

That line of controlling precedent underscores the fundamental flaw in WMA's argument. In its opposition to dismissal, WMA relied exclusively on its allegation that it is a Florida resident that was damaged by Believe's postings on the internet. That does not even come close to satisfying due process. What WMA was required to show is that this France-based defendant specifically targeted or directed

27

its actions toward the state of Florida. But there is no such allegation in the complaint (nor could there be). Indeed, nothing was pled to connect Believe to the state of Florida, much less to show that it ever targeted this state in any way. As such, WMA made no *prima facie* showing that due process is satisfied, requiring affirmance. This result is bolstered by the very fact that Believe is an entity of a foreign nation. *See, e.g., Daimler,* 571 U.S. at 142 ("[c]onsiderations of international rapport thus reinforce our determination that subjecting Daimler to the general jurisdiction of courts in California would not accord with the 'fair play and substantial justice' due process demands"); *Strongway*, 2024 WL 3964909 at *2.

## C.    *No Abuse of Discretion as to Jurisdictional Discovery*

In Issue 14 of its brief (pages 45-46), WMA argues that the lower court "did not address [its] application for jurisdictional discovery" and that this "was in error." The argument is just plain wrong—not to mention that the standard of review is the more deferential *abuse of discretion*, not "error."

A basic premise of WMA's argument is that it had some unconditional right to jurisdictional discovery. It does not. *See Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1290 (S.D. Fla. 2014). A plaintiff has no right to jurisdictional discovery where, as here, it failed to create a genuine dispute on a material jurisdictional fact through a *prima facie* showing of personal jurisdiction in its complaint. This was the very point made in *Diulus*:

> [A] district court does not abuse its discretion by denying
> jurisdictional discovery if the complaint was insufficient
> as a matter of law to establish a *prima facie* case that the
> district court had jurisdiction.  Because the [plaintiffs] did
> not meet their initial burden to allege a *prima facie* case of
> personal jurisdiction, we cannot say it was an abuse of the
> district court's discretion to deny them jurisdictional
> discovery.

*Diulus*, 823 Fed. Appx. at 849-50.

That alone fully supports the trial court's disregard of WMA's request for jurisdictional discovery.  But there is more.  WMA never even filed a motion for jurisdictional discovery.  It simply buried the request at the end of its response to the motion to dismiss.  That is legally insufficient.[19]  *See United Technologies. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009) (no abuse of discretion in rejecting

---

[19]    Though WMA has not appealed the lower court's disregard of its barebones request to amend its pleading (at the end of its 20-page dismissal response [Doc. 29 at 20]), that too would have failed since WMA: (a) did not describe any allegations to be added/changed; (b) did not submit a proposed amendment; (c) did not provide a conferral certificate; and (d) never filed a motion for leave to amend. *See Avena v. Imperial Salon & Spa, Inc.*, 740 Fed. Appx. 679, 683 (11th Cir. 2018) (no abuse of discretion disregarding request to amend in dismissal response because "[w]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend"); *Cita Trust Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) ("[f]iling a motion is the proper method to request leave to amend a complaint"; "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly"); *cf. Davis-Harrison v. Chief United States Prob. Officer*, No. 22-14334, 2024 WL 2874046, at *2–3 (11th Cir. June 7, 2024) ("we have repeatedly affirmed district courts that declined to allow a plaintiff to amend their complaint when the plaintiff failed to submit a motion to amend"); *see generally* S.D. Fla. Local R. 15.1 (motion to amend must attach amendment).

jurisdictional discovery where plaintiff "never formally moved the district court for jurisdictional discovery" and instead just "buried such requests in its briefs as a proposed alternative to dismissing" the defendant).[20]   Second, as this Court has emphasized, a plaintiff must provide the court with an explanation as to *why* jurisdictional discovery is needed and what facts the plaintiff intends to discover. WMA never did that either.  *See Hinkle v. Cirrus Design Corp.,* 775 Fed. Appx. 545, 550 (11th Cir. 2019) (affirming denial of a request for jurisdictional discovery where "[plaintiffs] did not move for jurisdictional discovery, and they did not explain in their filings in the district court, or in this court, what facts or even what type of facts they wish to discover if given the opportunity").[21]   And third, WMA did not

---

[20]     *Accord Nutramax Labs., Inc. v. Lintbells Inc.*, No. 8:22-cv-1691, 2023 WL 2598663, at *3 (M.D. Fla. Mar. 22, 2023) ("[t]o the extent that [the plaintiff] seeks to conduct jurisdictional discovery, its request – embedded in a response in opposition to a motion [to dismiss] – is procedurally improper and must be denied"); *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 535 F. Supp. 3d 1299, 1307 (S.D. Fla. 2021) (denying jurisdictional discovery where plaintiff merely asked for discovery in its response to motion to dismiss rather than filing a motion requesting discovery), *aff'd,* 43 F.4th 1303 (11th Cir. 2022); *Humana,* 2020 WL 13369049 at *4, n.3 (same; further observing that "[t]he failure of a plaintiff to investigate jurisdictional issues prior to filing suit does not give rise to a genuine jurisdictional dispute" and criticizing plaintiff's request for jurisdictional discovery as a "potential fishing expedition . . . in an attempt to marshal facts that it should have had - but did not - before coming through the courthouse doors") (citation omitted).

[21]     *See also Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd,* 722 Fed. Appx. 870, 878 (11th Cir. 2018) (affirming denial of jurisdictional discovery where plaintiff "failed to articulate what jurisdictional information it would seek or that it believes would be discovered as to [defendant] Airborne");

accompany its request with any conferral certificate as required by the local rules. *See* S.D. Fla. Local R. 7.1(a)(3); *cf. Quesada v. Better Earth, Inc.*, No. 6:23-cv-1809, 2024 WL 3890077, at *6 (M.D. Fla. Aug. 21, 2024) (denying the plaintiff's request for jurisdictional discovery as "procedurally improper" where it was "contained in a response" to the motion to dismiss with no certificate that she had "conferred with the opposing party in good faith" before making the request) (brackets omitted).

Accordingly, the lower court properly exercised its discretion in disregarding WMA's request for jurisdictional discovery, and this Court must affirm.

## II

### THE LOWER COURT DID NOT ABUSE ITS DISCRETION IN DENYING WMA'S RULE 59(e) MOTION

WMA has also appealed the denial of its post-dismissal motion seeking relief under Fed. R. Civ. P. 59(e). [Doc. 36.] That rule is titled and speaks in terms of a "Motion to Alter or Amend a <u>Judgment</u>." Fed. R. Civ. P. 59(e) (emphasis added). Since the record is clear that no "judgment" was entered below, Rule 59(e) does not even apply. *See, e.g., Saito v. Lewis*, No. 2:23-cv-266, 2023 WL 4759311, at *5 (M.D. Fla. July 26, 2023) ("[b]ecause no judgment has been entered here, Rule 59(e) is inapplicable"); *Molbogot v. MarineMax E., Inc.*, No. 20-cv-81254, 2022 WL

---

*Wolf v. Celebrity Cruises, Inc.*, 683 Fed. Appx. 786, 792 (11th Cir. 2017) (affirming denial of jurisdictional discovery where plaintiff merely made a "general request for jurisdictional discovery" that "did not specify what information he sought or how that information would bolster his allegations").

2671124, at *1 (S.D. Fla. July 11, 2022) ("[n]o judgment has been entered in this case, so Rule 59(e) is inapplicable").  This alone supports the denial of such relief.

But even if Rule 59(e) relief were available, WMA's motion was fatally deficient.  As this Court emphasized just a couple of months ago, "[a] Rule 59(e) motion cannot be used to relitigate old matters" or "raise argument or present evidence that could have been raised prior to the entry of judgment."  *See In re Hallucination Media, LLC,* No. 24-10194, 2024 WL 3898536, at *7 (11th Cir. Aug. 22, 2024); *see also Zavala v. Ward*, No. 21-10989, 2024 WL 510011, at *5 (11th Cir. Feb. 9, 2024) ("[b]ecause [the appellant's] Rule 59(e) motion was merely a rehashing of the exhaustion arguments that he raised in opposing the motion to dismiss, the district court properly denied it") *citing Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023) (internal quotations omitted).  Moreover, "it is well-settled that motions for reconsideration are *disfavored*, and that "[r]elief under Rule 59(e) is an *extraordinary* remedy to be employed *sparingly*."  *See Krstic v. Princess Cruise Lines, Ltd. (Corp)*, 706 F. Supp. 2d 1271, 1282 (S.D. Fla. 2010) ("[i]t is an improper use of the motion to reconsider to ask the Court to rethink what the Court . . . already thought through - rightly or wrongly") (emphasis added); *accord Caterpillar Fin. Svcs. Corp. v. Venequip Mach. Sales Corp.,* No. 22-cv-23002, 2023 WL 8258886, *3 (S.D. Fla. Nov. 29, 2023).

Given the "disfavored" and "extraordinary" nature of relief under Rule 59(e), the lower court did not abuse its discretion in denying such relief for several reasons. *First*, to the extent that WMA tries to characterize the 340 pages that were attached to its motion as "new" evidence on the issue decided, that was simply not true. As Believe fully explained in its response [Doc. 37 at 4-5], none of that purported "new evidence" even related to the issue of *personal* jurisdiction and was not actually "new" in any event. *See In re Hallucination*, 2024 WL 3898536, at *7 (Rule 59(e) cannot be used as a vehicle to "present evidence that could have been raised prior to the entry of judgment"). *Second*, as explained above, evidence and burden-shifting do not even enter into the analysis unless the plaintiff has satisfied its initial burden to make a *prima facie* showing of personal jurisdiction in its pleading—which WMA failed to do below. *Third*, WMA's motion was loaded with impermissible re-argument on various topics. *Fourth*, WMA just repeated its barebones request for jurisdictional discovery and for leave to amend—without any elaboration on the substance thereof. *Fifth*, as noted, Rule 59(e) relief is not even available absent a judgment, and no judgment has ever been entered below. For these many reasons, WMA's motion for Rule 59(e) relief was procedurally and substantively deficient, and the lower court's denial must be affirmed.

33

## III

## IN THE ALTERNATIVE, THE LOWER COURT'S DISMISSAL IS SUSTAINABLE ON OTHER GROUNDS

Although the lower court dismissed this case based on lack of personal jurisdiction, Believe raised several grounds for dismissal below in addition to personal jurisdiction. [*See* Docs. 22 & 30] As such, even if this Court were to disagree with the lower court's jurisdictional basis for dismissing this case, this Court can still affirm the dismissal based on any of those alternative grounds. *See, e.g.*, *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1137 (11th Cir. 2019) ("[w]e can affirm where the district court reaches the correct result but for the wrong reasons").[22]

---

[22] It is unclear why Issue 12 is even included in WMA's opening brief. It addresses Count IV in the complaint and argues that "Relief Sought under Count Four, Accounting, was Properly Pleaded." There are several basic deficiencies/oversights in that argument. At the outset, Believe was not even named in Count IV. Indeed, the very heading of that count reads: "STATED AGAINST DEFENDANTS YOUTUBE AND GOOGLE ONLY." The named Defendants YouTube and Google have already been voluntarily dismissed from the lawsuit [*see* Doc. 12 & 13], so Count 4 is no longer an active claim. Moreover, there is no request for an accounting in the global prayer for relief at the end of the complaint. [Doc. 1 at 23-24.] And finally, none of the required elements for an accounting claim are even alleged in that count. *See A&M Mgmt. Inc. v. Deme*, No. 18-cv-63099, 2019 WL 7344821, at *5 (S.D. Fla. May 14, 2019) (dismissing accounting claim with prejudice because "[i]n order for a party to sufficiently state a claim for an accounting, the party must show either (1) a sufficiently complicated transaction and an inadequate remedy at law, or (2) the existence of a fiduciary relationship"); *Restrepo v. Wells Fargo Bank, N.A.*, No. 09-cv-22436, 2010 WL 374771, at *3 (S.D. Fla. Feb. 3, 2010) (dismissing accounting claim with prejudice for failure to make the required allegation that "the contract demands between litigants involve

A.    _**International Abstention Doctrine**_

WMA's entire action is premised on its theory that it owns and possesses enforceable copyrights on all of the Russian music videos at issue.  To that end, it claims that it obtained those rights through its contracts with the band's producer/leader Andrei Razin.  [Doc. 1 at ¶¶ 13, 16]  But Believe countered such allegations by submitting the affidavit of Vitaly Kretc [Doc. 23],[23] which attested that the ownership rights to those works "have been at issue in the Russian courts for nearly two decades and continues to be litigated." [Doc. 23 at ¶ 6.]  Specifically, the affidavit recites what has transpired in the Russian courts since 2005 with respect to these works and explained that in 2022 the Russian court invalidated Razin's claimed right to such works, "granting rights for interested parties to resolve the ownership dispute."  [*Id.* at ¶¶ 9-15.]  Following that 2022 ruling, the estate of the band's lead singer filed a claim in Russia "to finally establish their rightful property rights to Tender May's music," and that "Russian Litigation is ongoing."  [*Id.* at ¶¶ 16-17 & Ex. C.]

---

extensive or complicated accounts and it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity").

[23]    *See, e.g., Euroboor, B.V. v. Grafova*, No. 2:17-cv-02157, 2018 WL 9617992, at *2 (N.D. Ala. Oct. 5, 2018) (courts may consider evidence outside the complaint when ruling on a motion to dismiss based on the international abstention doctrine).

Based on those facts, Believe argued in its motion below that the lower court should dismiss this action under the international abstention doctrine because that ongoing Russian litigation involves the same rights, parties, and works at issue here. [Doc. 22 at 11-15.]  Remarkably, WMA did not even respond to that argument anywhere in its memorandum opposing dismissal, choosing instead to simply ignore it. [*See* Doc. 29.]  Through such inaction, WMA abandoned any opposition to this ground for dismissal.  *See, e.g.*, *Jones v. Bank of Am., N.A.*, 564 Fed. Appx. 432, 434 (11th Cir. 2014) ("[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned").  That said, the doctrine is directly applicable here.  As this Court has previously recognized in the context of parallel international litigation, abstention is proper to promote a "friendly" relationship between sovereignties, the efficient use of judicial resources, and fairness to the parties—while avoiding duplication of efforts, the potential for conflicting judgments, and prejudice to the parties.  *See Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1523 (11th Cir. 1994) ("we conclude that the relevant concerns of international comity, fairness and efficiency point overwhelmingly, at this stage of the litigation, to deference to the German forum which has already rendered a judgment on the merits");[24] *Trust Int'l Corp. v. Nagy*,

---

[24]     *See generally Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222-24 (11th Cir. 1999) (reaffirming *Turner'*s analytic framework and finding that

No. 15-cv-80253, 2017 WL 5248425, at *6 (S.D. Fla. Mar. 28, 2017) (granting summary judgment based on international abstention doctrine); *see also ASI Diamonds, Inc. v. Allianz Versicherungs-Aktiengesellschaft*, No. 1:18-cv-20680, 2018 WL 8193867, at *4-5 (S.D. Fla. Aug. 16, 2018) (dismissing case on basis of international comity); *Koster v. Grafova*, No. 2:17-cv-02157, 2019 WL 2124532, at *10-11 (N.D. Ala. May 15, 2019) (dismissing counterclaim based on international abstention doctrine).

As noted, litigation over ownership of the works at issue began in Russia in 2005 and has only accelerated since that 2022 Russian ruling. If that foreign court ultimately rules that Razin has no ownership rights to the works at issue, then it would necessarily follow that WMA's derivative rights (allegedly obtained through purported contracts with Razin) would cease to exist, thereby negating the very premise upon which this lawsuit is built and rendering this whole proceeding a monumental waste of time. Or at the very least, if this Court were to push forward simultaneously with the intertwined parallel proceedings in Russia, there is a serious risk of conflicting judgments being entered down the road—not to mention unfair prejudice to Believe in the meantime by forcing this France-based company to litigate in the United States over Russian music videos. As noted, the very purpose

_____

abstention was appropriate in favor of parallel proceedings in Bermuda).

of the international abstention doctrine is to prevent such adverse consequences from occurring. Accordingly, this provides another basis for this Court to affirm the dismissal.

**B.** ***Failure to State a Valid Cause of Action***

    **1.**    ***Counts II (Statutory Damages) & III (Attorney's Fees)***

In the lower court, Believe moved to dismiss Counts II and III—which sought statutory damages and attorney's fees under 17 U.S.C. §§ 504 and 505 respectively. [Doc. 22 at 17-19.] Such relief, however, is not available for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made ***within three months after the first publication of the work***," pursuant to 17 U.S.C. § 412(2) (emphasis added.) As Believe explained in its filing below, that statutory restriction—with its registration requirement and 3-month limitations period—are fatal to WMA's claims because the attachments to the complaint reflected that there were no registrations for at least one of the works at issue and that all remaining works were first published *years* before WMA's alleged registrations, thereby precluding recovery. Moreover, Believe also pointed out that a claim for attorney's fees is not even allowed to be pled as a separate cause of action. *See, e.g., R.W. v. School Board of St. Lucie County, Fla.*, No. 15-cv-14300, 2016 WL 11701691, at *3 (S.D. Fla. May 23, 2016). As such, the dismissal of those counts can be affirmed on this alternative ground.

To the extent WMA addresses Counts II and III in its opening brief, it presents no actual argument to sustain them. [*See* WMA Brf. at 42-44, Issues 10 & 11.] As to Count II, WMA has simply lopped the entire statute (17 U.S.C. § 504) into its brief and claimed victory. That quoted statute spans nearly two full pages of single-spaced text in its brief. [WMA Brf. at 42-43.] After that 752-word quote, WMA just summarily concludes that "[r]elying on the above-cited federal statute, WMA sought damages and profits against Believe in the U.S. District Court." That is it. Not one word is said about how the facts of this case, as alleged, fit within that statute.[25] WMA then takes the same approach with respect to Count III. [*See* WMA Brf. at 44, Issue 11.] It simply quotes the statute allowing for fees and costs (17 U.S.C. § 505), then concludes that it is "entitled to seek costs and attorney's fees against Believe." Again, nothing is said about how the facts of this case, as alleged, fit within it. What all of this underscores is that WMA never actually responded below to Believe's specific arguments on Counts II and III and thereby abandoned any opposition thereto. Accordingly, the dismissal of these counts can and should be affirmed.

---

[25]    WMA's dismissal response below as to Counts II and III was no better and essentially took the same approach. [Doc. 29 at 16-18.]

### 2. *Count V (Interference)*

Under Issue 13 in its brief [*see* WMA Brf. at 45], WMA argues that Count V in its complaint was properly pled. That count asserted a claim for interference with beneficial business relationships and is expressly based on Believe allegedly "infringing copyrights." [Doc.1 at 23, ¶ 74.] But as Believe argued below [Doc.22 at 19-20], the Copyright Act preempts any and all common law claims based on alleged copyright infringement. *See* 17 U.S.C. § 301(a) ("[a]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title," and "[n]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State"); *Graham Ins. Group, Inc. v. Statronics, Inc.*, No. 10-cv-61904, 2011 WL 13217020, at *5 (S.D. Fla. Jan. 24, 2011) ("courts examining tortious interference claims grounded on the unauthorized use of copyrighted material have consistently found those claims preempted by the Act"). The dismissal of Count V can and should be affirmed on the basis of federal preemption.

### CONCLUSION

Based on the foregoing, Appellee Believe requests that this Court affirm the order granting dismissal and order denying Rule 59(e) relief.

Dated: October 21, 2024

*s/Allison S. Lovelady*
Allison S. Lovelady, Esq.
Florida Bar No. 70662
alovelady@shullmanfugate.com
Shullman Fugate PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 614-2592

*Counsel for Appellee Believe SAS*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing brief complies with the typeface and type style rules set forth in Fed. R. App. P. 32(a)(5)(A) and 32(a)(6), and with the type-volume limitation contained in Federal Rule of Appellate Procedure 32(a)(7)(B)(i), because the brief is in a proportionally-spaced Times New Roman 14-point font and contains 10,418 words (exclusive of the portions of the brief that do not count toward the word count as specified in Fed. R. App. P. 32(f)).

By:    */s/ Allison Lovelady*
Allison Lovelady, Esq.

41

## **CERTIFICATE OF SERVICE**

I certify that on October 21, 2024, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

By:    */s/ Allison Lovelady*
       Allison Lovelady, Esq.